IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED
03 MAR -7 AM 10: 57
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| TYRONE D. AGNEW, | ) |
| Plaintiff, | ) |
| vs. | ) CV 02-J-0974-NW |
| THE HON COMPANY and HON INDUSTRIES, INC., | ) |
| Defendants / Third-Party Plaintiffs, | ) |
| vs. | ) |
| HUNT MANUFACTURING COMPANY, BEVIS CUSTOM FURNITURE, INC. and BEVIS TABLES, | ) |
| Third Party Defendants. | ) |

ENTERED
MAR 7 2003

## MEMORANDUM OPINION

Pending before the court are: (1) plaintiff's motion for summary judgment (doc. 45), (2) defendants' motion for summary judgment (doc. 39), (3) third-party defendants' motion for summary judgment (doc. 42), and (4) third-party plaintiffs' motion for summary judgment (doc. 38). The court has reviewed the motions and the parties' other submissions.

### I. Background

Plaintiff, Tyrone Agnew, was hired at the Bevis furniture manufacturing plant in 1983. Plaintiff's Depo. at 24. This plant was purchased by Hunt from Bevis in 1985.

76

During the 1980s and 1990s, plaintiff alleges that he was subjected to a variety of racial harassment mostly in the form of harassing statements. Plaintiff's Depo. I & II. In November 1997, HON acquired the plant, located in Florence, Alabama, from Hunt Manufacturing. Upon taking over the plant, HON implemented an anti-harassment policy where employees were to report any harassment or offensive conduct through a variety of different avenues. Plaintiff's Exh. 33. HON's human resources representative has testified that where an employee makes a racially insensitive remark, HON's policy is that the employee be terminated. Starkweather Depo. at 121. Following HON's takeover of the plant, plaintiff alleges that he continued to be subject to a variety of racial harassment.

Plaintiff reported several instances of harassment that occurred to his supervisors or management. One time, a white employee walked up to another black employee and told him that he was, "sweating like a nigger at a KKK rally." Plaintiff's Depo. I at 148-49. This black employee reported this to his supervisor, the plaintiff, who subsequently reported it to management. *Id.* HON's response was to send the employee who made the comment home for half a day. Plaintiff's Exh. 8. In July 2000, plaintiff received a racially offensive e-mail from a white employee. Plaintiff's Depo. I at 235; Plaintiff's Exh. 10. Plaintiff reported this email to HON management. HON responded by suspending the individual for one week. Lane Affidavit at ¶ 8. Additionally, plaintiff reported a variety of fabricated criticisms about his work performance by a white co-employee to management. Plaintiff's Affidavit at ¶14.

Plaintiff met with a member of management on one occasion to voice his concerns about harassment at the plant and the manager only allowed plaintiff to discuss one specific thing and refused to allow him to discuss other incidents of discrimination. Carruthers Depo. at 59-62.

Plaintiff has alleged a variety of other harassing actions were taken against him following HON's takeover of the plant in the form of racial graffiti, racial slurs, and racial jokes. In one instance, plaintiff was told that, "all black men should get vasectomies so they can stop making black babies." Plaintiff's Depo. II at 25. In another instance, two employees from another department at the plant placed magazine pages in plaintiff's office with notations about black genitalia. Plaintiff's Depo. I at 218-219. Plaintiff subsequently reported this occurrence to the employee's supervisor. Plaintiff's Depo. I at 225-229. Plaintiff's manager later stated that they should take plaintiff's old office "outside and burn it because no one is going to want it after you done had it." Plaintiff's Depo. I at 107. Plaintiff believed that this comment was made based upon the color of his skin. *Id.*

In 2001, a white employee named Johnny Ray stated to plaintiff in the presence of the white employee's supervisor that, "if Abe Lincoln hadn't freed the slaves...you wouldn't be telling me what to do." Plaintiff's Depo. I at 301-02. In September, 2001, the finance manager/controller of the plant referred to plaintiff as a "boy." Plaintiff's Depo. I at 417. In another instance, an individual told a racially offensive story during a

3

supervisor's meeting. Plaintiff overheard this same individual later state that, "the reason why NASCAR is getting so popular is because there are no blacks in NASCAR." Plaintiff's Depo. III at 261-62.

The harassment was exacerbated when several of plaintiff's co-workers allegedly began to retaliate against plaintiff for his filing of a previous EEOC charge. This retaliation took the form of falsified reports about plaintiff's job performance. Plaintiff's Affidavit at ¶ 7; Thompson Affidavit at ¶¶ 4, 5.

On February 13, 2002, plaintiff had an altercation with Jerry Campbell, a co-worker, in which he called plaintiff a "nigger." Plaintiff's Exh. 26. Plaintiff quit immediately following this altercation. He then notified a supervisor and the human resources department of the plant. *Id.* The plant investigated this claim but did not discipline Campbell in any way. Plaintiff's Exh. 27.

On March 18, 2002, plaintiff filed an EEOC complaint alleging race discrimination. Defendants' Exh. 12. On April 18, 2002, plaintiff filed this action for race based hostile environment, constructive discharge, wage disparity, retaliation, conspiracy and outrage.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case...A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III. Analysis

**A. Successor Liability**

At the outset, it is necessary for this court to determine whether plaintiff may rely upon incidents that occurred to plaintiff during his employment at the plant prior to the sale of the plant to HON. Generally, when one corporation sells its assets to another corporation the purchaser is not liable for the seller's debts or liabilities absent an express or implied agreement to assume those liabilities. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182, n.5 (1973); *Desporte-Bryan v. Bank of America*, 147 F.Supp.2d 1356, 1362 (S.D. Fla. 2001). However, these common law rules of successor liability are overridden in the context of employee/employer relationships due to a recognition of congressional policies against discriminatory labor practices present in statutes like Title VII, 42 U.S.C. § 2000e, *et. seq.* and 42 U.S.C. § 1981. *Id.*

There are several factors that should be considered by courts when making a determination of successor liability in employment cases: (1) whether the successor company had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been sufficient continuity in the business operations of the predecessor and the successor to justify imposition of liability. *Musikiwamba v. ESSI, Inc.*, 760 F.2d 750 (7th Cir. 1985); *Rojas v. TK Communications, Inc.*, 87 F.3d 750 (5th Cir. 1996); *Desporte*, 147 F.Supp. 2d at 1362. This third factor includes a variety of sub-factors including: (a) whether the new employer uses the same plant, (b) whether it uses the same or substantially the same work-force, (c) whether it uses the same or substantially the same supervisory personnel, (d) whether the same jobs exist under substantially the same working conditions; (e) whether the successor uses the same machinery, equipment, and methods of production; and (f) whether it produces the same product. *Id.* A determination must be made by balancing all of the relevant factors. *In re National Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983). The determination of liability is fact specific and must be conducted in light of the legal obligations and facts of each case. *Id.*

In regard to the first factor, prior notice of the claim, plaintiff had previously filed EEOC claims in 1990 and 1993, but it cannot be inferred from this that HON would have had notice that plaintiff was still suffering racial harassment. HON's takeover occurred

in 1997, four years after plaintiff's last EEOC claim. Moreover, it would have been reasonable for HON to have inferred that if plaintiff continued to suffer racial discrimination he would have filed an EEOC complaint given his past willingness to do so. Plaintiff asserts that HON failed to do adequate due diligence regarding any potential litigation, but there is no requirement that a successor company engage in any due diligence in relation to liability for pre-succession employment discrimination claims. Plaintiff's Brief in Opposition to Defendant's Motion at 22-23. As such this factor weighs in favor of finding no liability on HON's part.

Second, no evidence has been presented to indicate that the predecessors were unable to provide the relief requested at the time of the ownership change (due to insolvency or for any other reason). Accordingly, this factor also weighs in favor of finding no successor liability on HON's part.

Third, it must be determined whether there is a significant amount of business continuity in HON's ownership. This factor weighs in favor of finding HON liable for pre-purchase claims as the subfactors almost invariably point to a finding of continuity. HON utilizes the same plant as before, apparently produces the same product and utilizes the same machinery, equipment and methods of production. Nelson Depo. at 92-93. Additionally, the same work-force largely made the transition. The only factors weighing against continuity are the fact that there are some new supervisory personnel and that a new harassment policy was put in place. Defendants' Exh. 5. However, on the whole,

there is sufficient continuity for this factor to weigh in favor of finding liability.

In evaluating these factors, several courts have held that the notice requirement is the most critical because, it "would be grossly unfair, except in the most exceptional circumstances to impose successor liability on an innocent purchaser...." *Desporte*, 147 F.Supp.2d at 1363 quoting *Musikiwamba*, 760 F.2d at 750.

In evaluating the relevant factors in light of the specific factual circumstances of this case, there does not appear to be a basis for successor liability given HON's lack of notice of plaintiff's claims and the ability of the previous owners to have provided relief to plaintiff at the time of the plant's ownership change. Thus, HON is only liable for any discrimination against plaintiff following HON's takeover of the plant.

Accordingly, third-party defendants' motion for summary judgment is granted as to HON's claim against third party defendants for indemnity because the lack of successor liability indicates that there can be no possible recovery from HON for the third-party defendants to indemnify as the court finds HON liable only for events post-dating its purchase of the plant.

**B. Wage Disparity Claim**

Plaintiff bases his wage disparity claim on the assertion that two white supervisors were similarly situated to him yet receiving higher pay. To establish a claim for wage disparity due to race discrimination, a plaintiff must show that: (1) he is a member of a protected group; (2) he was paid less than a similarly situated white employee; (3) he was

9

equally qualified as similarly situated white employees; and (4) he was treated less favorably due to his race than others who were not his protected class. *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992); *see also Bazemore v. Friday*, 478 U.S., 395-96 (1986) citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). However, plaintiff has failed to sufficiently meet his burden to show that the individuals were similarly situated.

Both of these white individuals held the same position as plaintiff, but there has been no evidence presented that the individuals had equal or less tenure than plaintiff or that they had similar education, experience and training at that position. Plaintiff makes the assertion that he had been at the plant longer than the two white employees, but provides no citation to any evidence in the record. However, HON has submitted an affidavit indicating that the two supervisors that plaintiff compares himself to had five and seven years more experience as supervisors than plaintiff. Richardson Affidavit at ¶3. Length of service as a supervisor is a legitimate factor used by HON in determining a supervisor's salary. *Id.; County of Wash v. Gunther,* 452 U.S. 161, 167 (1981).

Accordingly, plaintiff's wage disparity claim is due to be dismissed as he has failed to establish a necessary element of his prima facie case.

## C. Retaliation Claim

Plaintiff bases his retaliation claim on the assertion that several white employees at HON waged a campaign of discrimination against him from 1999-2002 due to EEOC

charges he filed in 1990 and 1993. This is a lengthy period of time which ordinarily would result in there being no causal connection between the protected activity and the alleged discrimination. *See Maniccia v. Brown*, 171 F.3d 1364, 1369-70 (11th Cir. 1999). However, one of the perpetrators of this retaliation stated to a supervisor that plaintiff had done something a long time ago and he could not get over it. Lane Affidavit at ¶ 9. Thus, this comment creates at least a question of fact relating to whether a causal connection exists.

However, ultimately plaintiff's claim must fail because he cannot demonstrate an adverse employment action taken against him. The alleged retaliatory actions taken against plaintiff took the form of falsified production reports indicating, in essence, that plaintiff was not appropriately doing his job. Kathy Russell Depo. at 25; Thompson Affidavit at ¶¶ 4, 5. However, plaintiff has not presented any evidence that he suffered any adverse employment action from these falsified reports. On at least one occasion the white employee who falsified the reports was caught. Lane Affidavit at ¶ 9. In a more extreme case, the Court of Appeals for the Eleventh Circuit found no adverse employment action. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1241-42 (11th Cir. 2001). In *Davis*, the court found that no adverse employment action was present where a plaintiff complained about negative job performance memoranda being placed in his file and also had his "officer in charge" designation removed from his title. *Id.* at 1240-44.

Accordingly, plaintiff's retaliation claim is barred.

**D. Conspiracy Claims**

Plaintiff asserts that several HON co-workers (Campbell and Wood) were involved in a conspiracy to violate his civil rights. However, HON asserts that any such conspiracy claims are barred by the intracorporate conspiracy doctrine. "Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alachua County Commissioners*, 200 F.3d 761, 767 (11th Cir. 2001). There is an exception to this doctrine where employees are acting outside of the scope of their employment. However, the Court of Appeals for the Eleventh Circuit has not adopted this exception and in fact specifically declined to reach the issue when faced with it. *Id.* at 769-770.

Nonetheless, the court need not reach the question of whether this exception is valid because, even if it were, plaintiff fails to meet it. Plaintiff has simply failed to present sufficient evidence to demonstrate that the actions in question, of the white employees, were outside the scope of their employment. "[M]anagers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Community Health Center, Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). Accordingly, plaintiff's § 1985 and § 1986 conspiracy claims are barred.

Moreover, plaintiff's state law conspiracy claim is barred. "[T]here is no

'conspiracy' where the only parties to the alleged conspiracy are the corporation and one of its agents and the corporation's liability is predicated upon the theory of respondeat superior." *Williams v. Marcum*, 519 So.2d 473, 474-75 (Ala. 1987). Plaintiff again claims that the co-employees (Campbell and Wood) were harassing him outside of the scope of their employment, and that this conspiracy to harass was then ratified by HON. However, first, plaintiff has failed to demonstrate that the co-employees were acting outside the scope of their employment. Second, there is no evidence that HON ratified Campbell and Wood's harassment, as plaintiff only reported Campbell's harassment to HON. Plaintiff's Brief in Opp. to Def.'s Motion at 41. Thus, HON could not have ratified the conspiracy because it knew of only one individual potentially harassing plaintiff.

### E. Outrage Claim

A plaintiff must demonstrate three elements in order to succeed on a claim for outrage: (1) that the defendants' conduct intended to inflict emotional distress, or knew or should have know that emotional distress was likely to result from such conduct; (2) the conduct was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. *Moore v. Spiller Associated Furniture, Inc.*, 598 So.2d 835, 836 (Ala. 1992). The tort of outrage addresses "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Grantham v. Vanderzyl*, 802 So.2d 1077, 1081 (Ala. 2001) *quoting American Road*

*Service Co. v. Inman,* 394 So.2d 361, 365 (Ala. 1980). The Alabama Supreme Court has recognized the applicability of the tort of outrage in only very limited circumstances. These circumstances are: (1) wrongful conduct within the context of family burials, (2) an insurance agent's coercing an insured into settling an insurance claim, and (3) egregious sexual harassment. *Thomas v. BSE Industrial Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala. 1993). Plaintiff has failed to cite to any decision finding a claim for outrage in the context of a race discrimination claim.

However, even if the tort of outrage was available in the context of a race harassment situation, the allegations in plaintiff's claim simply do not rise to the incredibly high standard necessary to bring a claim for outrage. Plaintiff points to a variety of harassing comments made towards him, as well as some alleged instances of retaliation. These instances are insufficient to support a claim for outrage which is available in only the most egregious circumstances.

### F. Hostile Environment and Constructive Discharge Claims

The court, finding that genuine issues of material fact remain as to plaintiff's claims for hostile environment and constructive discharge, denies defendants' motion for summary judgment as to these claims.

### IV. Conclusion

Based upon the foregoing, plaintiff's motion for summary judgment is **DENIED**. Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part,

as set forth above. Plaintiff's claims for wage disparity, retaliation, outrage and conspiracy are **DISMISSED WITH PREJUDICE**.

Third-party defendants' motion for summary judgment is **GRANTED**. Third-party plaintiffs' claims against third party defendants are **DISMISSED WITH PREJUDICE**. Third party plaintiffs' motion for summary judgment against third party defendants is **DENIED**.

**DONE** and **ORDERED** this the ___6___ day of March 2003.

                                                Inge P. Johnson
                                                U.S. District Judge